which is United States v. McCoy & Nix. Okay, we'll hear from Mr. Wood. Mr. Wood, you are representing Mr. McCoy, is that correct? That's correct, Your Honor. May I please the Court, my name is Robert Wood. I represent Earl McCoy. The Sixth Amendment guarantees to the accused a panel of impartial and different jurors. If only one juror is biased, the defendant is denied his right to an impartial jury. In United States v. Parse, this Court tells us that the presumption applies, a presumption of a bias applies, where a juror has deliberately concealed information on voir dire. In order to obtain a spot on the jury. Pardon me, Your Honor? In order to be included in the jury. Yes, that's correct, Your Honor.  in this case, the Court found that that did, in fact, occur. Well, actually, no. The Court found that the juror didn't raise his hand when asked if he had a conviction, but didn't find that he did it to get on the jury, that he wasn't trying to secure a seat on the jury. To the contrary, the Court found that he, had he known that that would have got him off, he probably would have tried to get off, right? Is that what the Court found? The Court did not find that he lied during voir dire to obtain a seat on the jury, but PARSE does not require that. In fact, PARSE does not say that the purpose of obtaining, at page 111 of PARSE, the Court says in PARSE that where the juror has deliberately concealed information bias is to be presumed, and in fact, they cite the case of McCoy v. Goldstone, and in that case, in McCoy v. Goldstone, if you read that case, the Court found that the juror had simply concealed information. In fact, practically speaking, it would be nearly impossible to make a finding that a juror had concealed information for the purpose of obtaining a seat on the jury, because you'd have to almost read the juror's mind to make that determination. If a juror, for example... The courts draw inferences. The courts make those kinds of findings all the time about intents, right? In fact, the Court here in this case found in her decision that based upon the juror's contrived refusal to disclose the full extent of his criminal history during the evidentiary hearing until faced with documentary evidence of the same, the Court concludes that juror number three failed to respond truthfully to the juror questionnaire and the court's four-year questions as they both pertain to criminal history. Are you arguing for a per se rule in cases like this? Well, PARCE does have a per se rule, if you read the case at page 111. And refresh me, the per se rule that you want to apply is what? And it isn't just PARCE. There are several cases other than PARCE that say that if a juror has a felony conviction and answers untruthfully about it, then what are the consequences? There's a presumption of bias. Now, that's a rebuttable presumption. For example, in this Court's case of Lankford versus United States... But it's not an... It's a presumption. It's not... It's a presumption. It doesn't mean that it's an irrebuttable presumption. It just means that there's a presumption of bias. And the question then would be, does the juror come forward and give honest answers at a hearing that overcomes that presumption? And for example, in this Court's case, the Lankford case, which is also in my brief and the government discusses it as well, in Lankford, the court, the juror came forward and said she was embarrassed about her prostitution conviction. And in that case, it was not a similar crime to the defendant's crime. The defendant in that case was a doctor charged with Medicare fraud. And so the juror said, I had nothing against this doctor. I didn't tell them about my prostitution conviction because I was a Sunday school teacher. And the judge believed her. And the juror was found to be credible. In this case, the juror lied at the – at the juror – the juror continued lying at the hearing. Do you think the juror here was biased in favor of or against your client? We – it's impossible to say. As very similar in the Dyer case, it's very difficult to say because we can't read his mind. We don't know if he was biased against us or for us. And in fact, in the Dyer case, the juror had a husband who was in jail with the defendant, but also had a brother who had been the victim of a murder very similar to the murder that was – that the defendant had committed. And so it was going both ways. It was very difficult to say if the juror was – how the juror was biased. But it turned out, as the verdict shows, it looked like he was biased against the defendant. But – but – I may be missing something. It sounds as though you have a – you're positing a presumption that can't be tested. And in this case, also, the juror – How would a district judge go about testing this presumption? Pardon me, Your Honor? How would a district judge go about testing whether bias existed if you – if it ultimately depended on reading a juror's mind? By following the case law and by finding that if the juror – if the juror lies during voir dire and lies about why they – why he did not tell the truth during voir dire, I will reserve the balance of my time and follow up on that. No, you can finish the question. Okay. If the – if the judge holds a hearing and the juror lies – is lying, there must have been a reason why the juror was lying. Why was the juror – why was the jury not coming forward with honest information during voir dire? And then – and then comes to the hearing and lies at the hearing, which the whole purpose of the hearing is to find out why the juror lied during voir dire. We all know the result of the verdict. But didn't the district court find that he didn't lie? That he didn't intentionally – did not deliberately fail to honestly answer the voir dire questions? Did not intentionally fail to reveal the information about his prior jury service? I'm reading from page 447 to 448 at 275 Fed Sub 3rd, and it says, based on Juror 3's contrived refusal to disclose the full extent of this criminal history during the evidentiary hearing until faced with documentary evidence, the court concludes that Juror 3 failed to respond truthfully to the juror questionnaire and the court's voir dire questions as they both – It's not the same as lying, I guess. Didn't the judge make a distinction? He called this a relatively simple individual with a lack of education and sophistication who had difficulty comprehending certain areas of inquiry. Well, that's – that may be also true. And so if you fail to truthfully answer a question, but you do so not because you're intending to deceive, but because you either don't get it or you're shy or something else, does that create this presumption that you said applies? It also says she failed to respond truthfully to the juror questionnaire and questions as both pertain to his criminal history and his exposure to jail. So that failed to answer truthfully. I don't know how else that can be interpreted about criminal history and jail. All right. Well, you've reserved, so we'll get to hear from you again. But thank you. Thank you very much, Your Honor. You bet. And now we'll hear from Mr. Whitmer on behalf of Mr. Nix. Yes, Your Honor. May it please the Court, counsel? Your Honor, I actually have the same problem when reading the original decision. It's that it seems like it's unclear whether or not the district judge is saying whether or not the juror was intentionally lying, because at times it does say that Juror Bradford is being untruthful. And just a basic reading of the juror hearing from June 12th and from June 14th, I don't think it can be reasonably questioned whether or not he's intentionally lying. Throughout the juror hearing, it's brought up that he committed this burglary third. He's given an opportunity to address it. He says he's innocent of it. As soon as he says that he's innocent of it, I think there might have been a question also about whether or not we felt that the actual hearing itself was biased towards the defendant. At that point in time, the defendants did not have an opportunity to cross-examine the juror Bradford. It was just the court doing the inquiry at that point. After he had said that he was innocent, the defendants stood up and said, well, we have a confession from his burglary saying that he absolutely did this. And when confronted with his confession, he admitted, yeah, yeah, I did that. Subsequently, it came out also that he had another conviction for burglary second. And I know that Mr. Wood didn't get an opportunity to talk about this. I'm going to talk about this very quickly. There was a second Rule 33 motion that was also filed where we didn't even get an opportunity to be able to cross-examine the witness again. This was in relation to another burglary, a burglary second that looked identical to the ones that Mr. Nix and Mr. McCoy were facing with such bizarre coincidences as it was breaking into houses using BB guns, stealing guns, jewelry, and drugs. We weren't even given an opportunity to be able to cross-examine him about this. He denied any knowledge, just like he did with the other criminal possession stolen property felony where he did the carjacking until we showed him his confession again. He was lying throughout. He was told. The district court puts a lot of significance on the fact that he didn't lie for the purpose of securing a seat on the jury. Mr. Wood seems to think that that doesn't matter so much, I think, and I want to know if you agree. Isn't that the law in this circuit anyway, that you have to have lied for the purpose of getting on the jury? I think that there's two ways to look at that. I think that there's, well, first of all, there's four real ways to look at it. You can look at it through the McDonough test, which I think is very specific to civil cases, and there's an additional inquiry that can be used in a criminal case. But because the Sixth Amendment is implicated, I think that it goes straight to presumed bias in that case. There's actual bias inquiry, there's implied bias inquiry, and there's inferred bias inquiry. There's actual bias here based on our position, based on the continuous lies, just like Juror Conrad and Parse. There's implied bias based on the very identical crimes that Mr. Bradford went to prison for and denied ever having gone to prison for, where he did the exact same kind of burglary that was alleged in the indictment. And there's inferred bias just from looking at all of his testimony. It just wasn't believable. Specifically, and I think that the second portion of that is asking whether or not, well, did he try to get on this jury? He's asked very specifically seven different times, so did you want to be on this jury? Yes. Did you want to be on this jury? Yes. Do you want to be on this jury? Yes. Do you want to be on this jury? Yes. Then his counsel, and it's in the record. He was asked, do you want to be on the jury? Yes. And the counsel from behind him, and it's on the record, says to him, I don't think he understands the question. And after the sixth time, they ask him again, so did you really want to be on this jury? And he's like, no. No, I didn't. Let me ask you this. If you come out to a variety error that he had a criminal conviction, 1685B would have left him off the jury, right? He couldn't have served as a juror. Yes, he would have been disqualified statutorily. And similarly to Terrell Parker, who was another juror in this case, who they also ran his criminal background, and they saw that he was the other African-American male out of a veneer of 83. There were only two African-American males that had a criminal history as well, had a felony. They immediately say, oh, this guy has a felony. The defense says, well, did you run the other juror specifically mainly because, well, he's African-American too. Did you run him too? And they said that that was an appalling question. They didn't explain why they had run the one African-American juror. And that's why I also made it. But in any event, it seems to me if we're going to do what you're asking us to, then maybe the better course would be to run everybody's rapshoot before they hit the courthouse for jury duty so we can make sure that convicted felons don't somehow get on to a jury. Is that what we ought to be doing? Or none of them, yes, because I don't think. Or none of them means that if it turns out that somebody slipped on, you're saying then new trial, automatic. I mean, that would seem to me to be a huge windfall. I don't think that in every case it should happen. Because I think also in Lankford, Lankford specifically, that person had a misdemeanor conviction, but that person wasn't biased and it came out in the hearing that they weren't. They only had a misdemeanor conviction, which granted it was for prostitution, which is more embarrassing. But the judge here did make a finding that there was no bias, right? Yes or no? It's an abuse of discretion review on whether or not that is accurate. I think if you look at the juror hearing, it's very clear that this person was not only said he was trying to get on to the jury six times, but that there's no other explanation for why he lied about not only his felony convictions but other stuff too. He did have another explanation. He said he didn't understand the question. He thought that there was a question with respect to the age, either his age or the age of the conviction. I think that is what the court came to, but I think that strains credulity specifically when he's asked, well, you were asked if you have ever been a defendant in a criminal case. He had been on at least five occasions where he had gone to jail at least five times, and he said he didn't understand what a defendant was. That kind of ludicrous conclusion, how does a man sit on a jury and determine whether or not someone gets 150 years when he doesn't even know who's on trial? When they say this person's the defendant, when he himself was a defendant five times and went to prison, wasn't he sitting in prison saying I don't really understand why I'm here because I don't even know what a defendant is? Had he gone through trials? Had what? Had he been tried or did he plead? I don't know, Your Honor. I know that specifically on the doc sentences. I think at some point he said he didn't recall. Yes, I think that's actually true. And I think there's ‑‑ I think it's unclear about the remainder of his criminal history because the criminal history that we had foiled was inconsistent with the DCJS reports that came back. And I think ‑‑ Was there any attempt by the defendants to make inquiries into the potential jurors before trial? Before the ‑‑ like during jury selection? Before trial. No. We did make subpoenas post verdict trying to get that information because we knew that Terrell Parker had already been run. And when we did that, those subpoenas were quashed. And that's the second point of my brief was that it clearly meets the Nixon standard, the subpoenas for the DCJS is for the other person that other people that jurors that could have been ran. And the court made that determination, too, when they made us sign affidavits saying we never ran anyone prior to the trial starting. The only problem was that I signed one, he signed one, my esteemed colleague signed one, which we accept their representations. The other co‑counsel never signed one, and the FBI was sitting at that desk. Presumably they were the ones that did the initial criminal history searches, and we weren't given those, and they didn't sign affidavits like we had to be able to explain. And that's why we sought the subpoenas that ultimately came to chambers, were somehow put back into the record a year later on the record in minutes, and they never were disclosed to us. We thought that those met the Nixon standard. All right. Well, Mr. Whitmer, we're way over. I apologize, Your Honor. No, that's all right. You were answering questions, but Mr. Wood reserved a minute for rebuttal, so we'll now hear from the government, Mr. Marangolo. Am I saying that right? Marangolo. Marangolo. Okay. Good morning still. May it please the Court, my name is Robert Marangolo, and I represent the United States on this appeal, as I did at the district court. I think Judge Keir set the nail on the head when you asked counsel were the lies that were stated by the juror made in order to get a seat on this jury. And Judge Wolford, specifically in her very detailed 65-page written decision, held that he did not lie for the purpose of securing a seat on this jury. And that's what this comes down to is not whether there was a misstatement, not whether there was a false statement, and not even just whether there was an intentional false statement, but whether a misstatement or false or intentionally deliberate lie demonstrates bias. And that's the crux of any Sixth Amendment claim that the defendants were denied their right to an impartial jury. And they have, in this case, failed to demonstrate that juror number three was biased against them. As Judge Parker said before, I mean, there's a statute that would bar such a person from serving on a jury, right? Yes, there is. That's presumably a reflection on the bias or untrustworthiness of a convicted felon, right? For the same reason that you're allowed to bring that up when you cross-examine a witness, because a conviction alone undermines credibility, it would seem that a conviction is what disqualifies you from serving on a jury because you are not trustworthy. You're biased. Well, I don't think there's — if that were the case, then there would be a per se rule that said any time a felon is on a jury, there has been demonstrated per se bias. And I don't think that's what this Court's precedents have said. I think in Greer and in Pars, this Court has said there is no per se rule disqualifying a juror every time there's a false statement. They have also — No, false statement is one thing. Conviction is what we're talking about. It's a false statement about a conviction. If it's a false statement about knowing law enforcement officers or a false statement about having gone to law school, that might be a false statement, and it might then lead to disqualification. But a false statement about your own criminal convictions, that is going to get you off the jury automatically, right? It will get you off the jury automatically, as it did the other juror when it was discovered that that juror had a felony conviction. It got him off the jury in advance. That's correct. But this Court has never held — and, in fact, I'm not aware of any Second Circuit or other appellate authority to have held that strictly based on a juror's prior felony conviction, a subsequently discovered felony conviction, that that must invalidate an otherwise — Why wouldn't implied bias? Why wouldn't the fact that somebody's a convicted felon and failed to disclose it reflect an implied bias? An implied bias against whom? I think that's an important question, is that who is the person allegedly biased against? And we're — the argument here is that these defendants — Implied bias is a bias conclusively presumed as a matter of law, right? And doesn't the fact that there's a statute that automatically gets you bounced sort of support the notion that there's a presumed bias as a matter of law? I don't think the statute that disqualifies convicted felons states that it's because they're biased. The statute lists several categories of individuals that are statutorily disqualified. It does not say, and I have not read anything in the legislative history of that section, that the statutory disqualifications are based on a finding, a legislative finding, that these disqualified individuals are biased or presumed incredible as a matter of law. As you sat there and listened to this man's testimony, did you conclude that he was lying? No, Your Honor, I did not. I concluded that from watching this man, that he did not want to be asked questions about his criminal history, that his criminal history was some 30 years old, that he had difficulty recalling it, understanding certain questions that were asked of him, and— He'd been in jail five times. Well, he'd been arrested multiple times. There's some sort of leaps with the assertions in the record about five times in jail. There's no jail records that were put forth before this Court showing he's been in custody and served five sentences of jail. There's nothing like that, just like there's been nothing to demonstrate that we run criminal histories on the African-American jurors. Those are suggestions and loose representations based on what the record is, and are not supported by the record here. The crux of this, Your Honor, is that if they cannot demonstrate that juror number three was biased against them, their right to be tried by an impartial jury has not — they have not been deprived of that right. Suppose, you know, instead of just having juror one, we had, I mean, this single juror, we had two, three, four jurors with felony convictions. Would the judge be obligated to grant the Rule 33 motion in those circumstances? Based strictly on? Strictly on the felony convictions, but no other showing of bias. No, Your Honor, I don't think so. I think that would reflect, again, a per se rule. So let's just beat this hypothetical to death. Every single juror has a felony conviction, but defense counsel is unable to prove in a hearing bias. If the crux of the Sixth Amendment right to be tried by an impartial jury is bias of jurors, then no. Proving statutory disqualification is not the same. That jury's okay. Well, they have not been demonstrated to be biased so as to deprive the defendants their Sixth Amendment right to be tried by an impartial jury. So it's the government's position that before you get relief under Rule 33, you must demonstrate bias. Your Honor, that's what this Court's precedent have set forth, that it is not strictly whether or not there has been a lie or a false statement or a statutory disqualification. This Court has said that the crux of the Sixth Amendment analysis is bias. And if there has not been bias demonstrated, then there is no deprivation of the Sixth Amendment right to a fair trial. And in this case, Judge Wolford went in great detail in reviewing and analyzing the testimony and the applicable law and her finding that Juror No. 3 did not lie for the purpose of securing a seat on this jury and was not biased in any way against these defendants is entitled to deference by this Court. Are you basing that on Langford? Put aside for a minute out-of-circuit cases. Are you basing that on Gambino, Langford? Gambino, Langford, Greer, Pars, and even I think Stewart touched on each of these, this key fact that it is bias. It is not a per se false statement. It is not per se whether we discover that there is a statutory disqualification that a juror made a false statement about. It is bias. And that's what Judge Wolford focused her decision on. That's what the crux of her questions at the hearing were on. And her finding was not clearly erroneous and was not an abuse of discretion. So you're inviting us to append a bias requirement on 1865? No, Your Honor. I'm asking you to apply the McDonough test as this Court set forth in Pars and in Greer and in Langford that it is not strictly a false statement by a juror. It is also the motive underlying that false statement and whether that demonstrates bias. And if it does not, then a impartial jury, a right to an impartial jury has not been violated. I want to change gears very quickly. Yes. You concede that the Count II conviction should be vacated, right? We do. Yes, Your Honor. So we need to remand for resentencing at least with respect to that, correct? Correct, Your Honor. You are saying the other 924C convictions stand on aiding and abetting and attempt, right? Yes. That is correct. There's also then a First Step Act argument, which wasn't raised before the district court because the First Step Act hadn't, I guess, been passed at that point. But if we're remanding now for resentencing, is that something that the district court ought to be able to consider? Well, the district court should be able to consider whatever is raised by the defense. And if the defense raised the First Step Act in front of the district court, then the district court will, in fact, have to pass on whether or not that statute applies to the sentences of these defendants which were imposed prior to the enactment of the First Act. You wouldn't object to the district court considering that, would you? No, Your Honor. I would not agree that the First Step Act applies, but I would not object to, and I think it's important that rather than passing at the appellate level that First Step, it should be argued and passed on at the district court level. I think the question really is, if I'm hearing it, is that you're not going to argue that it's beyond the scope of the mandate if we remand on Count 2 that the judge can't consider the First Step Act with respect to stacking all the other 924Cs. Well, I don't know, Judge, what the scope of the remand is going to be. So I don't want to say what we will and won't argue on it. Assuming, for these purposes, we agree with you, we're not just assuming that, that Count 2 is vacated, remand for sentencing. So on that hypothetical, then you would agree that the court can consider the First Step Act as a bar to stacking the other 924Cs. I think we're going to be getting to that issue, Judge, of whether or not it's appropriate for the court to consider the First Step Act at the resentencing. So exactly the arguments that we would make in opposition to that, I'm not going to pass on at this point, but I do think that it is appropriate prior to this court construing the applicability of that act that it first be passed on by a district court. Unless there are further questions, I'll rest on my brief. Thank you, Your Honor. Thank you. We'll hear from Mr. Wood, who reserved a minute of rebuttal. Your Honor, first of all, with respect to the district court decision, the legal analysis, there's two things to consider. First of all, the district court decision discussed the Parse case in light of McDonough, and when you read the Parse case, McDonough isn't even discussed in the Parse case because the Parse case discusses the First Amendment, and McDonough is a civil case. And counsel just mentioned the Parse case and McDonough in the same breath, and they're two completely different concepts. McDonough is a civil case. It does not discuss the First Amendment. Parse is a First Amendment case, and the district court completely mixed them up and applied the wrong standard, and that needs to be corrected. The Parse case does say, and it follows actually Colombo, which also says that there is a presumption of bias whenever a juror intentionally gives incorrect information about a material matter, there is a presumption of bias. Bias against whom? And it does say that. Bias against whom? There's a presumption of bias, and it doesn't say it's particularly against anyone. It can be inferred against one party or another depending on what the juror said. I guess it could be considered a bias against the party who loses eventually. Depending on what the juror said, you'd have to look at the context of what the juror said. It would depend on the circumstances. The juror said I have no felony conviction. But that's a very good question. The juror said I have no felony conviction, but I have a felony. So that's a false statement. You say that that gives rise to a presumption of bias. I'm going to leave you up to that. My question is biased against the government or biased against the defendant or who? Or both? It could be both. And, in fact, if I could just give you an example, the court in Dyer, and, in fact, you could read the dissenting opinion in Boney, what the judge said in Boney was what that shows is that this is a person who's completely untrustworthy, who has no care for the law whatsoever and should not be sitting on a jury. And, ultimately, that hurts the defendant. Ultimately, the defendant loses when that happens because he's the one going to prison. I mean, the government is hurt by it, too, and the people are hurt by it if the defendant is acquitted. But, ultimately, if the defendant goes to prison, the defendants hurt by that. But just reading. This doesn't tell us which way the jury is going to vote. Yeah, everyone can be hurt by it. But just if I could, Your Honor, from page 59 of my brief, I was talking about. . . Can you bias the Washington so far? I'm sorry, Judge. I'm sorry. If you could speak into the microphone. If you're. . . I don't. . . I'm unclear where we are if biased against both parties can get us Rule 33 relief. I don't understand that. You don't understand why there would be bias against both parties? Yeah, because that means you're not putting your finger on the scale one way or another. First of all, we don't know. . . We can't read the person's mind, so we don't know why he lied. First of all, with respect to this gentleman in our case, we don't know why he lied in this case. We don't know why he sat there and didn't tell us anything about him. Maybe he's heard of our clients. Maybe he knows all about them. He's heard about them on the streets, and he wants to put them away. We don't know. There was a hearing on this, and there's nothing to suggest any of the things you've just talked about, right? No, because we can't read his mind. No. So I don't think we should speculate. Anything else? No. Other than I would ask the Court to just carefully review the transcript, as Mr. Whitmer pointed out, this is a person who said several times he wanted to sit on the jury. And that was at the hearing. That was not during the voir dire. That was my confusion for Mr. Whitmer. At voir dire, he didn't say anything. So at the hearing, he said many times he wanted to sit on the jury. Okay. All right. Rule of reserve, thank you very much. Well argued. The last matter is on submission, so we will reserve on that as well. Court is adjourned.